Clarence Roy SMITH; Betty Smith, Plaintiffs–Appellees,

v.

**ROGERS GALVANIZING CO.,** Defendant–Appellant.

No. 96–5168.

United States Court of Appeals, Tenth Circuit.

Oct. 28, 1997.

Stephen L. Andrew (D. Kevin Ikenberry with him on the brief), Stephen L. Andrew & Associates, Tulsa, OK, for appellants.

Greggory T. Colpitts (Clifford R. Magee with him on the brief), of Tulsa, OK, for appellee.

Before SEYMOUR, Chief Judge, EBEL and BRISCOE, Circuit Judges.

BRISCOE, Circuit Judge.

Plaintiffs Clarence and Betty Smith filed this action against defendant Rogers Galvanizing Company, alleging defendant violated the continuation rules of the Consolidated Omnibus Budget Reconciliation Act (COBRA), 29 U.S.C. §§ 1161–1168, by failing to give plaintiffs notice of entitlement to elect to continue their health care coverage upon Clarence Smith's termination from employment with defendant. Following a non-jury trial, the district court ruled in favor of plaintiffs, concluding defendant failed to provide plaintiffs with sufficient notice of their right to elect continuation health care coverage. The court awarded plaintiffs $40,005.16 in insurance benefits and attorney fees in the amount of $44,022.50. Defendant appeals, attacking both the judgment and the fee award. We affirm.[1]

I.

Clarence Smith was a thirty-year management employee of defendant. He has been unable to work since May 18, 1992, because of emphysema. He received $150 per week under a short-term disability insurance policy provided by defendant, which expired after a period of six months. His employment was terminated effective November 1, 1992.

Clarence Smith was notified by the Social Security Administration by letter dated November 3, 1992, that he had been determined to be disabled and was entitled to retirement, survivors, and disability insurance benefits under Title XVI in the amount of $944.40 per month beginning in November 1992. The Social Security Administration determined he became disabled on May 22, 1992.

On or about October 28, 1992, defendant's human resources manager, Robert Krewett, visited plaintiffs' home for the purpose of personally notifying Clarence Smith that his employment would be terminated effective November 1, 1992. The president of the company had asked Krewett to personally contact Clarence Smith regarding his termination and COBRA rights because Clarence Smith had been a valued employee of the company for over thirty years. During the visit, Krewett explained that, under COBRA, Clarence Smith's termination was a qualifying event entitling plaintiffs to elect to continue health insurance coverage under the plan offered by defendant. Krewett also advised plaintiffs that the cost of continuation coverage would be between $550 and $600 per month. Krewett did not send a confirmation letter regarding plaintiffs' rights under COBRA. During the visit, Clarence Smith asked Krewett if defendant could arrange to pay his health insurance premiums until he was eligible for Medicare coverage (which would not occur until November 1, 1994). Krewett stated he would check into the matter, but he did not again contact plaintiffs until June 1993 when he advised plaintiffs their failure to elect COBRA continuation coverage within sixty days following the November 1, 1992, termination date effectively terminated their COBRA rights.

Defendant intentionally paid plaintiffs' monthly health insurance premiums of $557.94 for November and December 1992. Defendant also paid their January premium because of an internal error. Although de-

---

1. Plaintiffs have voluntarily dismissed their cross-appeal challenging the amount of the judg-

ment and the court's refusal to award statutory penalties.

fendant stopped paying the monthly premium thereafter, the insurance company failed to delete plaintiffs from coverage because of a failure of communication, and the insurance company continued to pay plaintiffs' incurred medical bills through May 31, 1993. As a result of these combined errors, plaintiffs believed defendant had acceded to their request to pay their monthly premiums until Clarence Smith qualified for Medicare coverage. Effective May 31, 1993, defendant terminated the insurance plan offered to its employees and switched to a self-funded medical group plan. Clarence Smith was hospitalized on June 8, 1993, and learned he was not eligible for coverage.

Plaintiffs brought this action against defendant seeking continuation medical insurance coverage and ensuing benefits under COBRA. The district court concluded defendant failed to provide plaintiffs "with a proper qualifying event notification as required under COBRA." Aplt.App. at 35. As plaintiffs were not given proper notice, the court concluded Clarence Smith had until November 1, 1994, when he became eligible for Medicare benefits, to elect continuation coverage, and Betty Smith's period of time to elect was extended beyond that. *See* 29 U.S.C. § 1162(2)(A)(v) and (2)(D). The court further concluded plaintiffs were entitled to collect from defendant the amount of any medical bills incurred during the continuation coverage period, less premiums and applicable deductibles.

At a subsequent hearing to resolve the issue of damages, the parties apparently agreed defendant would determine the amount of benefits due plaintiffs under the self-funded insurance plan.[2] Judgment was entered in favor of plaintiffs on June 20, 1996, in the amount of $40,005.16, plus attorney fees of $44,022.50.

## II.

### Sufficiency of notice

■ The district court concluded the oral notice given to plaintiffs by Krewett did not satisfy the notice provisions of COBRA. Defendant argues the information was provided in good faith and was more than adequate to

allow plaintiffs to make an informed decision about whether to participate in COBRA continuation coverage. We review the district court's findings of fact for clear error and its conclusions of law de novo. *Steiner Corp. Retirement Plan v. Johnson & Higgins,* 31 F.3d 935, 939 (10th Cir.1994), *cert. denied* 513 U.S. 1081, 115 S.Ct. 732, 130 L.Ed.2d 635 (1995).

■ COBRA requires that employers allow former employees the opportunity to continue health care coverage under the employer's plan (at their own expense, not to exceed 102 percent of the employer's cost) if a qualifying event occurs. 29 U.S.C. § 1161. When a qualifying event occurs (such as termination of employment, *see* 29 U.S.C. § 1163(2)), the employer is required to notify the plan administrator within thirty days of the date of the qualifying event. 29 U.S.C. § 1166(a)(2). The administrator is then required to notify "any qualified beneficiary" of the qualifying event. 29 U.S.C. § 1166(a)(4). In an action for benefits under COBRA, the administrator bears the burden of proving adequate COBRA notice was given. *See Stanton v. Larry Fowler Trucking, Inc.,* 52 F.3d 723, 728–29 (8th Cir.1995).

■ Here, defendant was both the sponsor and the administrator of the insurance plan. Accordingly, it was defendant's duty under COBRA to notify plaintiffs, both of whom were qualified beneficiaries, that Clarence Smith's employment termination was a qualifying event that afforded them the right of continuation coverage.

Unfortunately, COBRA contains no specific requirements as to the manner in which notice must be given. In general, courts that have addressed the issue have held that "a good faith attempt to comply with a reasonable interpretation of the statute is sufficient." *Lawrence v. Jackson Mack Sales, Inc.,* 837 F.Supp. 771, 782 (S.D.Miss.1992), *aff'd* 42 F.3d 642 (5th Cir.1994); *Jachim v. KUTV, Inc.,* 783 F.Supp. 1328, 1333 (D.Utah 1992); *Branch v. G. Bernd Co.,* 764 F.Supp. 1527, 1534 n. 11 (M.D.Ga.1991), *aff'd* 955 F.2d 1574 (11th Cir.1992) ("courts have generally validated methods of notice which are calcu-

---

**2.** The record on appeal includes only a portion of the hearing transcript. Accordingly, we must

rely on the district court's docket sheet to determine the outcome of the hearing.

lated to reach the beneficiary"); *see also* H.R.Rep. No. 453, 99th Cong., 1st Sess. 563 (pending promulgation of regulations defining what will constitute adequate notice, "employers are required to operate in good faith compliance with a reasonable interpretation" of COBRA's requirements).

The district court concluded defendant failed to provide plaintiffs with a proper qualifying event notification because (1) the oral notice did not advise plaintiffs of the specific amount of the monthly premium to continue coverage, and (2) the oral notice did not advise plaintiffs they had forty-five days after a positive COBRA election to pay the monthly premium.

█ We conclude the first ground—that defendant did not advise plaintiffs of the specific amount of the monthly premium— was not alone sufficient to invalidate the notice. Krewett advised plaintiffs of the approximate range of the monthly premium.[3] Thus, we conclude defendant satisfied the controlling standards (i.e., good faith and reasonableness) with respect to this narrow piece of information.

As for defendant's failure to advise plaintiffs when their first premium payment would be due, it appears to be a closer question whether this by itself rendered the notice inadequate. District courts have held that failure to advise beneficiaries of premium due dates, combined with other notice deficiencies, renders the notice invalid. *See, e.g., Van Hoove v. Mid–America Bldg. Maintenance, Inc.,* 841 F.Supp. 1523, 1534 (D.Kan.1993); *Phillips v. Riverside, Inc.,* 796 F.Supp. 403, 410 (E.D.Ark.1992) (notice did indicate when the " '45 days to pay' " began to run). We have not found any case discussing whether omission of notice of the payment grace period, considered alone, renders the notice invalid. Ultimately, we find it unnecessary to decide this question because omission of the grace period was not the only deficiency in the notice.

3. When possible, we believe it is in the best interests of both the administrator and the beneficiary if the precise amount of the applicable monthly premium is provided to the beneficiary.

4. 29 U.S.C. § 1165(1) defines "election period" to mean "the period which—(A) begins not later than the date on which coverage terminates un-

█ Under COBRA, the rights of a covered employee and his or her spouse are not dependent upon each other. *McDowell v. Krawchison,* 125 F.3d 954, 959–60 (6th Cir. 1997). "For example, a covered spouse might choose to elect coverage while the covered employee does not, or they might choose different plans." *Id.* Thus, as plaintiffs have correctly suggested, the notice should have informed them of their right to elect individual coverage, as well as the amount of the premiums for individual coverage. *See* 29 U.S.C. § 1165(2) ("If there is a choice among types of coverage under the plan, each qualified beneficiary is entitled to make a separate selection among such types of coverage."). By failing to provide plaintiffs with this information, defendant did not fulfill its fiduciary obligation to them.

In addition, we have some question concerning whether the notice accurately informed plaintiffs of when their sixty-day election period began and ended. Under 29 U.S.C. § 1165,[4] plaintiffs' sixty-day election period did not begin to run until their coverage was terminated under the insurance plan by reason of Clarence Smith's employment termination. Unfortunately, the plan documents are not included in the record on appeal. Accordingly, we do not know whether the plan provided that employer-paid coverage ended immediately upon employment termination or whether it provided that employer-paid coverage continued for some time period following employment termination. Although it is uncontroverted that defendant intentionally paid plaintiffs' premiums through December 31, 1992, it is unclear whether the plan required that defendant do so or whether it did so of its own volition to provide plaintiffs with coverage during the election period. If the plan required defendant to continue coverage for the two-month period following employment termination, then plaintiffs' sixty-day election period did

der the plan by reason of a qualifying event, (B) is of at least 60 days duration, and (C) ends not earlier than 60 days after the later of—(i) the date described in subparagraph (A), or (ii) in the case of any qualified beneficiary who receives notice under section 1166(4) of this title, the date of such notice."

not begin to run until December 31, 1992. *See Phillips*, 796 F.Supp. at 410 n. 5; *see generally Gaskell v. Harvard Co-op. Soc.*, 3 F.3d 495, 498–501 (1st Cir.1993) (general discussion of background of COBRA and its operation).

In light of the above-noted deficiencies, we conclude the notice was inadequate to satisfy the standards of COBRA.

**Plaintiffs precluded from recovering damages/ability to pay**

■ Defendant argues that, regardless of the adequacy of the notice, plaintiffs suffered no harm because they would have declined continuation coverage due to their inability to pay the monthly premiums. In support of this argument, defendant points to the district court's factual finding that "at all relevant times [plaintiffs] did not have sufficient income to pay the monthly premium to continue their ... medical plan coverage because their $994.40 monthly income was required to pay other necessary living expenses." Aplt.App. at 33.

We are not persuaded by defendant's argument. Defendant breached its fiduciary duty to plaintiffs by failing to satisfy the notice standards of COBRA. As a result, plaintiffs were deprived of information necessary to make a reasoned and, indeed, a critical decision as to whether to elect continuation health care coverage through defendant's group plan. For us to now assume plaintiffs would have declined continuation coverage even if they had been fully informed of their rights is not only speculation but is inconsistent with the district court's factual findings. From the time Krewett visited plaintiffs' home through the time this action was filed, plaintiffs consistently expressed interest in maintaining continuation coverage. The fact that plaintiffs' monthly income was not sufficient to cover the costs of the joint coverage premiums does not persuade us that plaintiffs would have necessarily declined single continuation coverage as well had they been fully informed of their rights. It is entirely conceivable that, faced with the choice of paying the premiums or going without medical insurance altogether, plaintiffs could have borrowed money, sold assets, or found some other way to pay the premiums. We also note that plaintiffs were never forced to make a final decision on whether to pay for continuation coverage because Krewett's failure to timely respond to Clarence Smith's request that defendant pay the continuation coverage premiums, combined with actual continuation of plaintiffs' coverage, led plaintiffs to believe defendant had acquiesced in their request to pay the premiums until Clarence Smith was eligible for Medicare coverage.

**Plaintiffs precluded from recovering damages/lack of proof**

Plaintiffs introduced evidence at trial concerning the total amount of medical expenses incurred during the continuation coverage period, but did not introduce any evidence concerning the extent to which those bills would have been covered under defendant's self-funded plan. Apparently, plaintiffs believed the amount of applicable deductibles, co-pay amounts, premiums, etc., under the self-funded plan were "recoupments" that defendant had to affirmatively prove. The district court apparently agreed with plaintiffs and treated the premiums and deductibles as "recoupments." The court directed the parties to reach a post-trial stipulation concerning the amount of benefits payable and the amount of premiums due under the self-funded plan. If the parties were unable to reach such a stipulation, the court would hold "an additional hearing ... to determine Plaintiffs' damages," and it would be "the Defendant's burden to present evidence regarding the [self-funded plan] coverage, premium and deductible." Aplt.App. at 38. Ultimately, the parties agreed on the benefits payable and the court entered judgment in favor of plaintiffs. In doing so, the court expressly deducted amounts for premiums that would have been due. On appeal, defendant contends it was plaintiffs' burden to present evidence regarding coverage under the self-funded plan and, since plaintiffs did not present such evidence, they are precluded from recovering damages for medical expenses incurred after May 31, 1993 (the effective date of the self-funded plan).

■ We find it unnecessary to decide this issue because the record on appeal fails to demonstrate that defendant presented this issue to the district court. Although defendant claims it raised this issue in its post-trial brief, it has not included a copy of that brief in the record on appeal. Generally, we

will not consider an issue that was not raised and resolved in the trial court. *See Wilson v. Union Pac. R.R. Co.,* 56 F.3d 1226, 1233 (10th Cir.1995). We will consider matters not raised or argued in the trial court only in " 'the most unusual circumstances,' " which "may include issues regarding jurisdiction and sovereign immunity, ... instances where public interest is implicated, ... or where manifest injustice would result." *Rademacher v. Colorado Ass'n of Soil Conservation Districts Medical Benefit Plan,* 11 F.3d 1567, 1572 (10th Cir.1993). Because we conclude the issue presented does not fall within any of these exceptions, we decline to decide this issue.

### Attorney fee award

Defendant contends the district court abused its discretion in awarding attorney fees, arguing it acted in good faith in attempting to give plaintiffs notice of their COBRA rights and simply made a technical mistake in not providing the correct information.

Under 29 U.S.C. § 1132(g), a district court has discretion to award "a reasonable attorney's fee and costs of action to either party" in an action filed by a plan participant or beneficiary to recover continuation coverage benefits. In exercising its discretion, a district court should consider (1) the degree of the opposing parties' bad faith or culpability; (2) the ability of the opposing parties to satisfy an award of attorney fees; (3) the deterrence value of an award of attorney fees; (4) whether the parties requesting fees sought to benefit all plan participants or to resolve a significant legal question regarding COBRA/ERISA; and (5) the relative merits of the parties' positions. *Gordon v. United States Steel Corp.,* 724 F.2d 106, 109 (10th Cir.1983); *see also Thorpe v. Retirement Plan of Pillsbury Co.,* 80 F.3d 439, 445 (10th Cir.1996). In reviewing a district court's decision to award fees under § 1132(g), we apply an abuse of discretion standard. *Id.*

Although the district court summarily stated it considered each of the above factors in deciding to award fees to plaintiffs, it did not explain its conclusion on any of the factors. Independently analyzing the five factors, we conclude the third and fifth factors weigh in favor of granting fees to plaintiffs. With regard to the third factor, we conclude a fee award might deter defendant or others from making the same or similar mistakes in the future. With regard to the fifth factor, we conclude the relative merits of plaintiffs' position versus defendant's position favor a fee award; in particular, we conclude defendant's position regarding the adequacy of the notice is indefensible.

### Attorney fee award excessive

Defendant argues the attorney fee award was excessive. Defendant claims plaintiffs' counsel spent excessive time on certain tasks and submitted time records for an unrelated collection matter. Although defendant claims it raised these issues in its objection to plaintiffs' motion for attorney fees, a copy of that objection is not in the record on appeal. Because the district court's order regarding fees, which is included in the record on appeal, does not reflect that the issue was actually raised by defendant, or ruled on, we decline to consider it for the first time on appeal. *See Wilson,* 56 F.3d at 1233.

### III.

The judgment of the district court is AFFIRMED.